**CIVIL RIGHTS COMPLAINT**
**42 U.S.C. § 1983**

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★  NOV 26 2012  ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

TROY C. WALLACE, ET AL
Full name of plaintiff/prisoner ID#

Plaintiff,

JURY TRIAL DEMAND
YES ✓   NO _____

-against-

STATE OF NEW YORK, COUNTY
OF SUFFOLK, ET AL, SUE WESTERGARD
SOUTH HAMPTON TOWN POLICE, D.S.S. COMMISSIONER
Enter full names of defendants ALEXANDER H. ROBERTS (CHI)
[Make sure those listed above are
identical to those listed in Part III.] SEE ATTACHED
COMPLAINT
Defendants.      CAPTION

**CV-12 5866**

**FEUERSTEIN, J**

**WALL, M.J.**

------------------------------------------------------x

I.    Previous Lawsuits:

A.   Have you begun other lawsuits in state or federal court
dealing with the same facts involved in this action or
otherwise relating to your imprisonment? Yes ( ✓ ) No ( )

B.   If your answer to A is yes, describe each lawsuit in the space below
(If there is more than one lawsuit, describe the additional lawsuits
on another piece of paper, using the same outline.)

1. Parties to this previous lawsuit:

Plaintiffs: WALLACE/FREED

Defendants: NEW YORK STATE DEPT OF CORRECTIONS AND COMMUNITY
PAROLE OFFICERS KELSIC AND        SUPERVISION
SENZAMICI

2. Court (if federal court, name the district;
if state court, name the county) EASTERN DISTRICT OF
OF NEW YORK

3. Docket Number: 11-CV-5462 (SJF)(WDW)

1

THE PLAINTIFF IS ALSO INVOLVED IN AN ADDITIONAL LAWSUIT
UNDER THE CAPTION IN THE EASTERN DISTRICT OF NEW YORK

LYNCH/BUTLER V. DEMARCO  11-CV-02602

JUDGE:   JOANNA SEYBERT

4. Name of the Judge to whom case was assigned: _SANDRA J.F_

5. Disposition: (for example: Was the case dismissed? Was it appealed? Is it still pending?) _STILL PENDING_
_____

6. Approximate date of filing lawsuit: _NOVEMBER 2011_

7. Approximate date of disposition: _____

II.   Place of Present Confinement: _____ _N/A_ _____

A. Is there a prisoner grievance procedure in this institution?  Yes ( )  No ( )

B. Did you present the facts relating to your complaint in the prisoner grievance procedure?  Yes ( )   No ( )

C.  If your answer is YES,

1.  What steps did you take? _____ _N/A_ _____
_____
_____

2.  What was the result? _____
_____

D.  If your answer is NO, explain why not _____
_____

E.  If there is no prison grievance procedure in the institution, did you complain to prison authorities?  Yes ( )  No ( )

F.  If your answer is YES,

1.  What steps did you take? _____ _N/A_ _____
_____
_____

2.  What was the result? _____
_____

III.   Parties:

(In item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A. Name of plaintiff ___TROY C WALLACE  ET AL___

Address ___P.O. BOX 1533 RONKONKOMA, N.Y. 11779___

(In item B below, place the full name and address of each defendant)

B. List all defendants' names and the addresses at which each defendant may be served. Plaintiff must provide the address for each defendant named.

Defendant No. 1      STATE OF NEW YORK

STATE CAPITOL IN ALBANY

Defendant No. 2      SUSAN WESTERGARD,
Suffolk County DEPT of SOCIAL SERVICE

Defendant No. 3      Commissioner of NYS DEPT of
SOCIAL SERVICE (JOHN/JANE DOE)
ALBANY, NEW YORK

Defendant No. 4      County of Suffolk

HAPPAUGE, NEW YORK

Defendant No. 5      MAYOR MARK EPLEY
DEFENDANT No. 6      TOWN OF SOUTH HAMPTON
ALEXANDER M. ROBERTS      POLICE DEPARTMENT.
Community Housing INNOVATIONS (CHI)

[Make sure that the defendants listed above are identical to those listed in the caption on page 1].

3

IV.    Statement of Claim:

(State briefly and concisely, the facts of your case. Include the date(s) of the event(s) alleged as well as the location where the events occurred. Include the names of each defendant and state how each person named was involved in the event you are claiming violated your rights. You need not give any legal arguments or cite to cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. You may use additional 8 ½ by 11 sheets of paper as necessary.)

"SEE ATTACHED COMPLAINT"
THE DEFENDANTS AS PROSCRIBED IN THE LEAD PLAINTIFFS
ANNEXED COMPLAINT IN AN ONGOING EFFORT TO ENFORCE
CORRECTIONS LAW ARTICLE 6-C §168 THE STATE CONTINUES TO VIOLATE THE EX-POST FACTO
CLAUSE. AS WELL AS THE TOWN OF SOUTH HAMPTON IN AN IDENTICAL MANNER
PREEMPTING EXISTING STATE LAW. THE DEPART OF SOCIAL SERVICE BY AND
THROUGH SUSAN WESTERFARD CONTINUALLY DEPRIVES PLAINTIFFS THEIR LIBERTY
AS ARTICULATED IN THE LEAD PLAINTIFFS COMPLAINT AS WELL AS OTHER NAMED
ACTORS. *NOTE: THE PLAINTIFFS FEAR THAT RETALITORY ACTS
MAY BE TAKEN AS A RESULT OF SUCH CLASS
FILING SUIT

IV. A      If you are claiming injuries as a result of the events you are complaining about, describe your injuries and state what medical treatment you required. Was medical treatment received?

4

V.   Relief:

State what relief you are seeking if you prevail on your complaint.

COMPENSATORY, DECLARATORY AND INJUNCTIVE RELIEF
AND PUNITIVE DAMAGES RELATING TO CERTAIN
DEFENDANTS IN THE AMOUNT OF 25 million -
(TWENTY-five, million) UNITED UNITED STATES DOLLARS
AS A RESULT OF THE HARM AND INJURY SUFFERED BY
THE DEFENDANTS

I declare under penalty of perjury that on __11│17│1__, ~~I delivered this~~
                                              (Date)
~~complaint to prison authorities to be~~ mailed to the United States District Court for the Eastern

District of New York.

Signed this __17TH__ day of __NOVEMBER__, 20_12_. I declare under penalty of

perjury that the foregoing is true and correct.

_____
Signature of Plaintiff

_____
Name of Prison Facility

P.O. BOX 1533
RONKONKOMA, N.Y. 11779
Address

_____
Prisoner ID#

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
Troy C. Wallace, et al.
        Plaintiff(s)

     -Against-                                 **COMPLAINT**

The State of New York(1),
Commissioner of New York State Dept.
Of Social Services, John Doe(2),
Housing Coordinator for Suffolk County
Riverhead trailers, Susan Westergard(3)
Town of Southampton Mayor, Mark Epley(4),
County of Suffolk, New York(5)
Community Housing Innovations, Inc.
Executive Director Alexander H. Roberts(6)
        Respondents

For a judgment pursuant to the United States
Constitutional prohibition against Ex Post Facto law
relating to Corrections Law 168 Article 6-c,
Due Process and Equal Protection Clauses of the 14th
and 5th Amendments, and the State Preemption
Doctrine, Article 12-b of New York State Executive
Law Section 259 (c)-14
------------------------------------------------------------------X

## INTRODUCTION

1. January 21st, 1996 brought the enactment of Megan's Law requiring sex offenders who

   were either incarcerated or on parole or probation at the time of the enactment to register

   personal information with the State's Division of Criminal Justice Services. Such law is

   statute under Correction Law 168, Article 6-C.

2. Troy C. Wallace and all those similarly situated (hereinafter lead Plaintiff and Plaintiffs,

   respectively), will show that the retroactivity of such legislation breaches

   Constitutionality as it relates to the prohibition of States passing an ex post facto law.

3. On February 7th, 2006, Suffolk County passed legislation restricting sex offenders from living within a quarter mile of any school, nursery school or licensed day care facility thereby leaving the county in violation of the federal Constitution under forbidden ex post facto law by retroactively applying such local law to offenders whose convictions were reached prior to the above mentioned legislation and further violating New York State law as such County law in its enactment preempts pre-existing State law. In addition to the plaintiffs' challenging the constitutionality of Article 1 § 428 of the Suffolk County Housing Restriction Law as it relates to sex offenders, whom this class is designated as, we also challenge Article 1 §§ 215-1 through 215-5 of the code of the Town of Southampton, which is also in violation of the States Preemption Doctrine as well as Article 1§ 10 of the United States Constitution involving the prohibition of any State enacting an ex post facto law. Further, the Plaintiffs challenge the constitutional validity of N.Y Executive Law § 259-c (14), as its application in relation to the Plaintiffs violates the prohibition of any State enacting ex post facto law.

## BACKGROUND

4. Back on June 23rd, 1992 the lead Plaintiff, upon a plea of guilt, was convicted of sexual abuse in the first degree in Suffolk County Criminal Court  and sentenced to the term of six (6) months to be served in local custody, with an additional period of five (5) years of probation.

5. A technical violation of the terms of such probation occurred on August 19th, 1992 and as a result, the probation was revoked resulting in the lead Plaintiff being re-taken into custody.

6. Upon modified plea agreement, the lead Plaintiff was resentenced to the State term of 18-54 months, (1 ½ - 4 ½ years) on May 27th, 1993 for a revocation. On November 1st, 1995, under conditional release by operation of law, the lead Plaintiff was released from State custody and placed under jurisdiction of the Division of Parole.

7. The lead Plaintiff sustained yet another revocation, ultimately being released on May 1st, 1997 reaching the maximum expiration of Parole supervision. The lead Plaintiff is now currently under the jurisdiction of New York State Department of Corrections and Community Supervision by way of Parole due to a non-sex related subsequent conviction.

8. It is highly important to first examine what defines an ex post facto law, but to do so, we must look back at the court that landmarked such issue- **Calder v. Bull** 3 Dall 386 1 L.Ed. 648 (1798) initially defined as ex post facto in four areas:

   (a) **Every** law that makes an action done before the passing of the law, and which was innocent when done, criminal.

   (b) **Every** law that aggravates a crime or makes it greater than it was when committed.

   (c) **Every** law that changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed and

   (d) **Every** law that alters the legal rules of evidence and receives less or different testimony than the law required at the time of the commission of the offense, in order to convict the offender.

9. In **United States v. Hall** 26 Fed. Cas. No. 15, 285 p.84, 2 Wash. C.C. 366, Mr. Justice Washington reiterated much of what was said in Calder, but added, in his charge to the

jury, that an "ex post facto law is one… in relation to the offence or its consequences, alters the situation of a party to his disadvantage." This concept was adopted by the United States Supreme Court in **Kring v. Missouri** 107 U.S. 221.2 S. Ct. 443, 27 L. Ed. 506, and thus established a fifth class of laws embraced by the clause.


## Discussion

10. The State's slim contention in its failing effort to bring Megan's Law under the reigns of the Constitution, claims that said legislation bears a civil intent and by no means did it intend by construction to punish.

11. Contrarily, the Plaintiffs argue that the legislature may indeed enact laws with the purest of intentions, but if the effect of such laws mirrors that of punishment, then "that" law takes on, in effect, an ex post facto law. "But it is well settled that any law which has the effect to alter the situation of a party to his disadvantage is ex post facto as to him." **People v. Cox** 16 N.Y. Crim R. 248, 67 A.D. 344, 73 N.Y.S. 744

12. Perhaps Supreme Court Justice Stevens, dissenting in the case of **Doe v. Smith** (citations omitted), expressed it best:

"It is also clear beyond peradventure that these unique consequences of conviction of a sex offense are punitive. They share three characteristics, which in the aggregate are not present in any civil sanction. The sanctions (1) constitute a severe deprivation of the offender's liberty, (2) are imposed on everyone who is convicted of a relevant criminal offense, and (3) are imposed only on those criminals. No matter how often the court may repeat and manipulate multifactor tests that have been applied in wholly dissimilar cases involving only one or two of these three aspects of these statutory

sanctions, it will never persuade me that the registration and reporting obligations that are imposed on registered sex offenders and <u>no one else</u> as a result of their convictions are not part of their punishment. In my opinion, a sanction that (1) is imposed on everyone that commits a criminal offense, (2) is not imposed on anyone else, and (3) severely impairs a person's liberty, is punishment."

13. The baffling example of non-punitive punishment is displayed when one fails to register under New York State statute, he or she incurs criminal sanctions, and some courts have ruled, included but not limited to **People v. Stark** 78 Misc. 2D. 87.355 N.Y.S. 2D. 906, that such stipulation in the statute is not punitive and is not found to be ex post facto because the increased punishment would be imposed for the present violation (failing to register) and not as an additional penalty for a prior conviction.

14. The Plaintiffs strongly disagree, simply because if the present violation (failing to register) comes by way of a neglected, yet new duty or obligation directly attributed to a prior conviction, in effect aggravates the crime thereby violating the constitutional prohibition against ex post facto law.

15. The lead Plaintiff challenges the constitutionality of Megan's law from two aspects: (1) the initial legislation in that the requirement to register fell upon all those convicted of qualifying offenses before the passing of the law; (2) the initial class of offenders were only required to register for a period of ten years. In 2006, just before that period was set to expire, the legislature amended the statute extending the registry requirement to lifetime duration.

16. Not only did such legislative act clearly violate the prohibition of the passing of any ex post facto law by the state, but in the same act, they were guilty of violating the constitutional prohibition against laws impairing the obligations of contracts.

17. Initially, this class of offenders filed federal suit (**Doe v Pataki**) arguing the constitutionality of further obligations. The trial court agreed with petitioners and the State appealed to a higher court which ultimately ruled in the State's favor. Their argument hinged on the claim that the State never made an agreement with the original class of offenders as to the duration of registering. The lead Plaintiff disagrees because at the time, all parties agreed upon settlement which under law amounted to a contract for which the State was found to be in full breach of. By doing so, the State violated Constitutional Mandates Laws against impairing the obligations of contracts.

18. A contract is an agreement by all parties, whether implied or expressed, verbal or written, to perform or provide services for a specified period of time. To amend the stipulations and/or conditions of the contract demanding an extended performance without party agreement essentially impairs one's obligation to perform.

19. Revisited, any law passed after the commission of an offense, which in relation to that offense or its consequences, alters the situation of a party to its disadvantage is an ex post facto law. **Kring v. Missouri** 2 S. Ct. 443

20. The fact that Plaintiffs are required to register after the commission of the offense and such obligation subjects the Plaintiffs in effect to further punishment in that due to housing restrictions, they are banished from their communities, some of their children are harassed, and in particular, the lead Plaintiff's wife has been evicted from her home for merely associating with her husband. Such status has made the Plaintiffs virtually

unemployable, thereby placing financial burdens on the Plaintiffs affecting their quality of life.

21. Again, in the case of **Doe v. Smith** (citations omitted), Supreme Court Justices, Ginsberg and Breyer equally dissent: "Telling, too as Justice Souter observes, past crime alone, not current dangerousness is the touchstone triggering the acts obligations. The touchstone adds to the impression that the act retributively targets past guilt, that it revisits past crimes more than it prevents future ones."

22. Another court explains it this way; "We are not impressed with the contention urged in the Congressional Committee report that if the ex post facto provisions of the amendment to the 'Guam Organic Act' is not applied, a number of convicted men will be released from prison. A wrong done on one person does not become rightful because it is done to several." **Putty v. United States** 220 F 2D 473.

23. In the Putty court, as it is interpreted through the eyes of the Plaintiffs' case, it would read: If the unconstitutional act is not applied (the registry and housing restriction), then a number of convicted men will be free to live wherever they so choose, as the Nation's charter permits, and will not bear the burden and further embarrassment of having their information disseminated throughout the community. The legally binding point drives itself home in the above case when it states: "A wrong done to one person does not become rightful because it is done to several." The weighted contention is that the legislative intent is to protect the more vulnerable members of society, but that only carries a theoretical ring that amounts to nothing more than a politically pumped up created fear aimed to paralyze communities.

someone from the public will harm this class of offenders or their families solely based on their status as a registered sex offender.

26. We are not persuaded that the legislature, in its shallow attempt to protect the public in enacting Correction Law 168 § 6-C, was ignorant as to the punitive effects it would have on offenders' lives. By such enactment, the State Legislature knew very well that their intentions did not have to be punitive by design, because the very nature of the legislation would spark society to punish by and through ostracism, harassment, public shunning and sometimes violence. I mean, how could they not? They've been socially engineered to do so. In addition, the Ex Post Facto clause mentions nothing in regard to intent and it does not recognize exceptions in cases where intent is not to change the legal consequences, therefore intent cannot be considered a factor when determining if a law is in violation of the Ex Post Facto clause.

27. In addressing the challenge to Article 1 § 428 of Suffolk County Housing Restriction law, the County, in an unconstitutional effort to protect the public from so-called sexual offenders, passed a law in 2006 restricting where an offender may reside, thereby making such action punitive in its effect. Restricting one's liberty in relation to a past criminal act where it leaves one at a disadvantage is an ex post facto law.

28. It has been held that a law which changes punishment is not in itself an ex post facto law unless the change inflicts a greater punishment or affects the offender unfavorably. 9 N.Y. Jurisprudence § 239 See also **People v. Warden**, Queens House of Detention for Men 43 Misc. 2D 109, 250 N.Y. 2D 15 (1964)

29. The right to be free is a substantial right. The fact that the lead Plaintiff or a certain class of people cannot socially interact as other freemen do, as it relates to locomotion and

residency, deems such class to be handicapped solely based on a past conviction and is unequivocally punishment. Aside from that, as expressed earlier in the brief, it leaves the offender at a severe social disadvantage in an important respect, oftentimes uprooting offenders from their communities for which they have been a part of their entire lives.

30. Other than the obvious punitive effect, the restrictive nature of the legislation itself, Suffolk County's Housing Restriction Law under Article 1 § 428-(5) describes further penalties for violating the provisions of such Article. As it reads: "A registered sex offender who violates the provisions of this Article shall be guilty of an unclassified misdemeanor punishable by no more than one year in jail."

31. To connect, I urge the court to examine **People v. Martinez** 82 Misc. 2D 56, 368 N.Y.S. 2D 699, "Furthermore, the new statute exposes the defendant to additional penalties. It is true that it does not inflict greater punishment for the crimes of which he has been convicted, but there is material difference between that and the fact that application of the amended statute would expose him to greater punishment.

32. § 428-1(A) spells out the baseless intent of the legislature,

      A. This legislature hereby finds and determines that sex offenders pose an unreasonable threat to the safety and well-being of children.

This legislature has played on the ignorance and fears of the public with such law and by the following statistics, I will show the court the gross misapplication of the law.

33. Approximately 95% of new sex crimes are committed by people other than registered sex offenders. We are most concerned about the horrible crimes that have been committed by strangers against children. These are very rare. According to a report of the U.S. Dept. of Justice , 93% of sex crimes against children are within the family or committed by adults

whom the children know well. Housing/ residency restriction will do nothing to prevent these crimes.

34. The logic of these laws is that we will make our children safer by preventing former sex offenders from sleeping at night near where children spend their days. Does this make sense? Consider too, that children are well supervised and guarded in schools. Have you ever heard of a registered sex offender invading a school and victimizing a child?

35. Consider also this information from Schenectady County, N.Y. Carl Strock, a columnist with the Schenectady Gazette did some research with the County District Attorney. He writes:

> In the past two years, the District Attorney's Office has processed 113 sex crime defendants, and of those, a mere six were registered sex offenders repeating their crimes. Further, of those six repeaters, only two were charged with offenses against children, and of those two, neither was accused as a stranger. They were both some kind of family member or acquaintance.

> In other words, in the past two years, there has not been a single case of what legislators and many others want us to believe is a tremendous social problem; Serial "predators" skulking around schools and playgrounds waiting to snatch away our innocent children for their perverted gratification. ("Schenectady Imaginary Predators") August 9th, 2007, Schenectady Gazette.

36. The legislators and some courts have wrapped their justification for such laws around civility, claiming that these regulatory schemes are not criminal, therefore ex post facto does not apply.

37. Unfortunately, that claim fails on two critical points:

    A. The fact that an offender is exposed to further criminal penalties by either failing to register or residing within ¼ mile of a school, "inter alia" based on a prior conviction that predates both statutes, thereby leaving petitioner at a severe disadvantage under ex post facto, and

    B. The constitutional language reads clear in pertinent part; "No state shall make an ex post facto law", never eliminating one law over the other civil-criminal, as the **Calder** court reinforces such constitutional clarity. A "law" refers to **ALL** law unless otherwise specified.

38. The **Kring** court explains the constitutional importance of ex post facto law, so much so that it is found twice in the Nation's charter; "First as restraint upon the power of the general government and afterwards as a limitation upon the legislative power of the States...it will be observed that here are grouped contiguously a prohibition against three classes of **retrospective** laws, namely bills of attainder, ex post facto and laws impairing the obligations of contracts.

39. **Preemption**

New York courts have on numerous occasions dealt with the issue of whether a municipal ordinance is invalid because the State legislature has preempted the area that the municipality had sought to enter. E.g., Village of Nyack v. Daytop Vil., Inc., 78 N.Y.2d 500, 505 (N.Y. 1991). The preemption doctrine represents a fundamental limitation on a municipalitiy's "home rule" powers. Local police power may not be exercised in an area in which it is preempted by State law. Jancyn Mfg. Corp. v. Suffolk Co., 71 N.Y.2d 91, 96 (N.Y. 1987). The Plaintiffs strongly believe that Article 1 § 428 of

Suffolk County's local Housing Restriction Law as it relates to sex offenders is invalid

based on the States definition of preemption. To further support directly citing Terrence

v, City of Geneva NY 10-cv 645 OT:


It is well settled that "[p]reemption applies both in cases of

express conflict between local and State law and in cases where the

State has evidenced its intent to occupy the field[.]" Albany Area

Bldrs. Assn. v. Town of Guilderland, 74 N.Y.2d 372, 377 (N.Y.

1989). Indeed, "[i]t is enough that the Legislature has impliedly evinced its desire [to

occupy an entire field] and that desire may

be inferred from a declaration of State policy by the Legislature

or from the legislative enactment of a comprehensive and detailed

regulatory scheme in a particular area[.]" New York State Club

Assn., Inc. v. City of N.Y., 69 N.Y.2d 211, 217 (N.Y. 1987). "In

that event, a local government is 'precluded from legislating on

the same subject matter unless it has received clear and explicit'

authority to the contrary[.]" DJL Restaurant Corp. v. City of N.Y.,

96 N.Y.2d 91, 95 (N.Y. 2001)(quotation omitted). The State's intent

to occupy an entire field additionally may be implied "from the

nature of the subject matter being regulated and the purpose and

scope of the State legislative scheme, including the need for

State-wide uniformity in a given area[.]" Albany Area Bldrs. Assn.,

74 N.Y.2d at 377.

40. Citing the case of NY v. Oberlander (citations omitted):

The New York State Constitution allows municipalities broad police power

relating to the welfare of its citizens. People v. Speakerkits, Inc., 83 N.Y.2d 814

(1994); N.Y.S. Club Assoc. v. City of N.Y., 69 N.Y.2d 211 (1987). However, that

local police power may not be exercised in an area in which it is preempted by

State law. Id. See also Levy v. City Commission on Human Rights, 85 N.Y.2d

740 (1995); Village of Nyack v. Daytop Village, Inc., 78 N.Y.2d 500 (1991);

People v. Cook, 34 N.Y.2d 100 (1974). Preemption applies both in cases of

express conflict between local and State law and in cases where the State has

evidenced its intent to occupy the field." Matter of Cohen v. Bd. of App. Village of

Saddle Rock, 100 N.Y.2d 395 (2003)(quoting Albany Area Builder's Assoc. v.

Town of Guilderland, 74 N.Y.2d 372 (1989)).

"Under [the preemption] doctrine, even in the absence of an express conflict,

a local law which regulates subject matter in a field which has been preempted by

State legislation is deemed inconsistent with the 'State's transcendent interest.'" Ba

Mar, Inc. v. County of Rockland, 164 A.D.2d 605 (2nd Dep't 1991)(quoting

Albany Area Builder's Assoc. v. Town of Guilderland, 74 N.Y.2d 372 (1989)).

"On the other hand, the mere fact that both the State and local governments seek to

regulate the same subject matter does not, in and of itself, render the local

legislation invalid on preemption grounds.

In order for the preemption doctrine to prohibit local legislation in a

particular area there must be an intent on the part of the State to occupy the entire

field." Id. "The legislative intent to preempt need not be express. It is enough

that the Legislature has impliedly evinced its desire to do so and that desire may be inferred from a declaration of State policy by the Legislature or from the legislative enactment of a comprehensive and detailed regulatory scheme in a particular area." N.Y.S. Club Assoc. v. City of N.Y., 69 N.Y.2d 211, 217 (1987). Additionally, "that intent may be implied from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area." Albany Area Builder's Assoc. v. Town of Guilderland, 74 N.Y.2d 372, 400 (1989).

41. The Plaintiffs also challenge NY Executive Law §259-c(14) which prohibits individuals who are on parole for certain categories of sex offenses from residing within 1,000 feet of schools where children under the age of 18 are enrolled. As in the case of Berlin v. Evans, 31 Misc. 3d 919, 923 N.Y.S. 2d 828 (N.Y. Sup. Ct. 2011), this statute is an unconstitutional ex post facto law because the lead Plaintiff committed the criminal offense before the effective date of the statute and the statute increased the penalty for the crime by effectively banishing him from residing within these buffer zones. 923 NYS 2d at 829. The court in Berlin agreed that under the United State Supreme Court's framework for analyzing such claims, the statute was excessive with regard to the non-punitive purpose of public safety and that the magnitude of the restraint involved in residency restrictions was sufficient for a lack of individualized assessment to render the statute punitive. Berlin, 923 N.Y.S.2d at 835-36. The court cited cases from four other states in which the application of similar statutes to sex offenders was found to have violated prohibitions on Ex Post Facto laws. Id. (citing F.R. v. St. Charles County Sheriff's Department, 301 S.W.3d 56 (Mo. 2010); Commonwealth v. Baker, 295 S.W.3d

437 (Ky. 2009); State v. Pollard, 908 N.E.2d 1145 (Ind. 2009); Mikaloff v. Walsh, No.
5:06-CV-96, 2007 WL 2572268 (N.D. Ohio Sept. 4. 2007)).

42. The State's contention will be, or has been, that Corrections Law 168 by legislative intent
is a non-punitive civil scheme thereby making such law non-criminal, and thus
warranting no ex post facto scrutiny. However, a civil regulatory scheme may fall under
ex post facto scrutiny if the statute in question is so punitive either in purpose or effect as
to negate the State's intention to deem it civil.

43. In the case of Smith v. Doe (2003), the court ruled in favor of the State using the
Mendoza-Martinez test. One of those factors being whether the act subjected registrants
to an affirmative disability or restraint. The court reasoned that the act did not impose a
significant disability or restraint, i.e. no restriction placed on activities such as particular
jobs or residence. Contrarily, here's where the Plaintiffs' cause of action drives itself
home. The fact is that Article I § 428 of Suffolk County's Housing Restriction Law fails
the ex post facto Mendoza-Martinez test as it clearly displays in intent and effect
affirmative disability in that the lead Plaintiff and those similarly situated are restrained
from living in certain areas lending to it the punitive effect that ex post facto requires.

44. Additionally, those adversely affected by Article 1 § 428 of Suffolk County's Sex
Offender Housing Restriction Law are denied their substantive due process rights. Such
process articulates that individual rights and liberties guaranteed by the Constitution
cannot be abrogated, rescinded or taken away without proper justification as if they were
mere privilege. Although higher courts have ruled in review of possible violations of
general due process and as a result have struck down ex post facto claims as it relates to
the constitutionality of registration requirements, matters of substantive due process have

not been raised until now. In addition, the Mayor of the Town of Southampton in his official capacity, acting by and through the Southampton Town Police has fallen in violation of the ex post facto law and the State's Preemption Doctrine in enacting and enforcing Article 1 §§ 215-1 through 215-5 of the Code of the Town of Southampton binding Plaintiffs to a local registry.

**Equal Protection.**

45. Susan Westergard, acting under color of law by and through the Commissioner of the Department of Social Services, has denied the rights, freedoms and immunities guaranteed by the United States Constitution as it relates to the operation of the Suffolk County sex offender trailer program. Under the current designated housing program, plaintiffs are denied their rights to attend therapeutic programming, schooling, employment and to maintain hygienic needs involving regular showering. The plaintiffs contend that certain guaranteed rights that cannot be abrogated, rescinded, or taken away as articulated under the United States Constitution are being suspended mirroring those diminished rights of that of prisoners. Federal law demands that each and every citizen or inhabitant of the United States is guaranteed a minimum standard of treatment no matter how degenerate. See Morrissey v. Brewer (citations omitted). Additionally, under the current program, Susan Westergard has knowingly and willingly denied the above mentioned guaranteed rights in that she has deliberately revoked the plaintiffs' opportunities to exercise them without cause. In essence, she has denied one's right to a.) earn a living, b.) further one's education and, c). meet one's therapeutic needs as it relates to sex offender counseling and outpatient drug treatment, thereby putting the public at further risk surrounding such plaintiffs regarding potential recidivism. Ms. Westergard

has acted in her official capacity with deliberate indifference putting her in violation of

Title 42 § 1983 of the United States Code as it relates to constitutional standards.

46. Alexander H. Roberts, acting under color of law in his official capacity as Executive

Director of Community Housing Innovations, Inc. (hereinafter CHI) in the provision of

transportation for said plaintiffs off of the secured premises of the property of Suffolk

County jail in Riverhead where such trailer program is located, has enforced the

unconstitutional standards that Susan Westergard in her official capacity has

implemented, thereby bringing such Executive Director within the parameters of Title 42

§ 1983 of the United States Code as a co-conspirator in the denial of such freedoms.

Aside from security concerns regarding the placement of said Plaintiffs, one should enjoy

the rights of other free men able to come and go as one pleases without suffering the

restraints of modified incarceration which equates to unlawful imprisonment.

SUMMARY

By definition, a retrospective law which creates a new obligation, imposes a new duty, or

attaches a new disability with respect to transactions, or considerations already past is recognized

as an ex post facto law. **SQUAW CREEK DRAINAGE DIST. V. TURNEY**, 138 S.W. 12,16

[MO.1911]

In light of the above definition, we must keep in mind the lead plaintiff was convicted in

1992, when there was no law requiring him to register, and there was no law forbidding him

from living within quarter mile of a school, daycare, or playground. Those laws were enacted

respectively in 1996, and 2006, and thereby impose a new obligation, duty, or disability. Unquestionably, the new law gives legal effect to the lead plaintiff's prior conviction. It would be used to convict plaintiff of a new crime. In fact, the prior conviction is the sole basis for the restriction that would result in a criminal charge. Further examining the legal effect of prior convictions, the prior conviction now means that the plaintiffs no longer may reside within a quarter mile of a school, daycare, or playground. It also means the plaintiffs must perform a duty ensuring the distance of a proposed residence. Failure to perform this new duty, and observe this new obligation carries with it the prospect of a new criminal liability.

The plaintiff and those similarly situated here have served their time making them persons with a felony conviction; a past fact by itself creates the obligation to register, not their present or future dangerousness. The lead plaintiff received the punishment available at the time of his conviction. He is under the same obligations as other persons to obey the law; he had additional obligations or disabilities that were imposed upon him at the time of his conviction.

If the State was required to present evidence that Petitioner is presently a Sex Offender - evidence of present or future dangerousness- the State might legitimately impose a present or future obligation to register, or live near a school. There would be no retrospective law violation, even if a past conviction were part of the proof. But here it is, the conviction itself, not any evidence of present or future dangerousness that alone imposes the new obligation, creating a direct retrospective additional obligation.

Based on all that this brief contains and the facts shown forth, the Plaintiff, et al compels this court to be constitutionally accountable when considering whether or not the plaintiffs may proceed under section 1983. Where other courts have been politically strong-armed, I urge this

court to fly in the face of misguided public opinion, and right a wrong, for which the United States Constitution demands. The public's outcry has very little to do with facts as statistics have shown and at some point those who possess the power to change things must embrace the moral good and not the politically correct. Selling the people the illusion of safety and using fear as a selling point, amongst other things, is flat out wrong. Wherefore, the Plaintiffs are seeking compensatory, declaratory and injunctive relief relating to the forced homelessness of the plaintiffs due to Article 1 section 428 of Suffolk County's Housing Restriction Law, loss of wages involving the denial of a right to earn a living, freedom of locomotion as it relates to one's liberty interests, one's right to maintain his hygiene involving the living conditions at the Suffolk County trailer, the right to further one's education. The punitive effects given the pervasive attitudes toward sex offenders have severely handicapped the plaintiffs' equal protection under the law. Therefore, the Plaintiffs pray that this court rules to rescind all obligations as it relates to the Plaintiffs and grant such other relief as the court may seem just and equitable.

This document was subscribed by me this 17th day of November, 2012.

Respectfully submitted,

Troy C. Wallace
Lead Plaintiff/Pro se
P.O. Box 1533
Ronkonkoma, NY 11779

CC: file